The Honorable Steve Oliver Prosecuting Attorney Eighteenth Judicial District East 501 Ouachita Avenue Hot Springs, AR 71901
Dear Mr. Oliver:
I am writing in response to your request for an opinion concerning a "Texas Hold 'em poker tournament." The tournament is described as follows:
 The sponsor would rent premises, tables, provide supervision and charge a $50.00 "qualifying fee" to each entrant. The entrant would then receive, for example, 1,000 chips. The winner through 8th place would then receive" qualifying credits." No cash or prizes are given. The" qualifying credits" qualify the players to participate in additional tournaments in the future and eventually qualify to play in one or more "final tournaments." The winner or winners of the final tournaments will be awarded travel, meals, overnight accommodations and paid entry fee to a major poker tournament event in an out-of-state casino.
With this factual predicate, you ask:
 1. Is the above scenario considered gambling since there are no cash or prizes given? Each player is participating for the opportunity to play at a major poker tournament event at an out-of-state casino.
 2. Is there any case law or Attorney General's opinions addressing whether or not "Texas Hold 'em," or similar poker games, are a game of skill? Mr. Hickam[, the attorney for the proposed tournament,] would like to compare this poker tournament to a bass tournament.
 3. If Mr. Hickam can demonstrate that the game of "Texas Hold 'em" is one of skill and judgment rather than chance and chance alone, would the described activities violate any criminal statute?
RESPONSE
In my opinion, the participants in these tournaments are wagering consideration by paying the entrance fee with the promise of prizes for an ultimate winner. With regard to Question 1, I believe that this scenario would be considered gambling and prohibited by A.C.A. §5-66-112. I cannot opine, however, on whether the constitutional prohibition of lotteries would apply because the question of whether the game is a game of chance and chance alone is a question of fact suited for the judiciary. See e.g. Op. Att'y Gen. 2004-357. With regard to Question 2, I have not found any Arkansas cases or Attorney General's opinions that address this matter. As I recently noted, this is a question of fact that I am neither equipped nor authorized to answer. Id. With regard to Question 3, A.C.A. § 5-66-112 prohibits the wagering of money or any thing of value on a game of cards and would be violated by the scenario described even if Mr. Hickman could prove that the game was not a game of chance and chance alone.
Question 1: Is the above scenario considered gambling since there are nocash or prizes given? Each player is participating for the opportunity toplay at a major poker tournament event at an out-of-state casino.
Your question assumes that there are no prizes being awarded in the tournament. In the scenario described, however, the top participants in the tournament receive "qualifying points" that entitle them to play in additional tournaments competing for an award of "travel, meals, overnight accommodations and paid entry fee to a major poker tournament event in an out-of-state casino." In my opinion, the award of incidental expenses and the entrance fee to a high stakes poker competition is a prize. Furthermore, since all participants will not be eligible to compete in the subsequent tournaments, the participants who are given the "qualifying points" are receiving something of value. As I recently discussed in Op. Att'y Gen. 2004-357, a poker tournament might run afoul of either the constitutional prohibition on lotteries or the statutory prohibitions contained in A.C.A. § 5-66-101 through -120.
The scenario you describe may constitute a lottery. I cannot, however, definitively opine on this matter. A lottery is "a species of gaming which may be defined as a scheme for the distribution of prizes by chance among persons who have paid, or agreed to pay, a valuable consideration for the chance to obtain a prize." Op. Att'y Gen. 2004-091 (citations omitted). The initial question is whether consideration is paid to participate in a potential lottery. Id. The second question is whether the game is controlled by chance such that winning is not influenced by the skill or judgment of those participating. Id. The third question is whether a prize is awarded. Id. If any one of these questions is answered in the negative, the scheme will not be considered a lottery. Op. Att'y Gen. 86-599.
With respect to the first requirement, the $50.00 entrance fee is consideration to participate in the competition. With respect to the second question of whether "Texas Hold 'em" is a game of chance, I cannot opine. This is a question of fact properly settled by the judiciary as I am neither authorized nor equipped to act as a finder of fact. See, e.g.
Op. Att'y Gen. 2004-357. With respect to the third requirement that prizes be awarded, the qualifying points offered allow a successful participant to continue to compete for the above mentioned expenses and fees. In my opinion, prizes are being awarded in this situation.
Regardless of whether the proposed scenario would violate the constitutional prohibition on lotteries, the scenario appears to be illegal under the statutory prohibition on gambling with cards. See
A.C.A. § 5-66-112(Repl. 1997). Gambling has been judicially defined as the risking of money between two or more people where one must a loser and one a gainer. Sharp v. State, 350 Ark. 529, 534, 88 S.W.3d 848
(2002). As discussed above, the entrance fee is consideration paid to play the game. The fee creates a $50.00 stake in the outcome of the game. Up to eight players will leave a tournament with "qualifying points" entitling them to continue to pursue the prizes being offered. The remaining participants have lost the $50.00 stake in the game. The league is the loser as to those who receive qualifying points, but the gainer as to those who do not. As described in your request, a participant will eventually win prizes in the form of lodging and incidental expenses as well the entry fee to a poker tournament. If this prize is paid for out of the funds generated by the entry fees in the initial tournaments, it is a method of wagering. See, e.g. Op. Att'y Gen. 2003-053. This would constitute the betting of money on a game of cards in violation of A.C.A. § 5-66-112 in my opinion. See also Op. Att'y Gen. 2004-357.
I further note that the location where the tournament occurs may be considered a gambling house under A.C.A § 5-66-103, and the owner of the equipment to be an exhibitor of gambling devices under A.C.A. §5-66-104. See Op. Att'y Gen. 2004-357. Because there is the risking of money between two or more people, gambling or gaming would be occurring in this scenario.[1] This is distinguishable from the scenario in Op. Att'y Gen. 2004-357 because you have described a situation where payment must be made to play. That factor was lacking in my previous opinion. I have enclosed a copy of Op. Att'y Gen. 2004-357 for your convenience.
Question 2: Is there any case law or Attorney General's opinionsaddressing whether or not "Texas Hold 'em," or similar poker games, are agame of skill? Mr. Hickam would like to compare this poker tournament toa bass tournament.
I have not found any Arkansas case law that addresses whether the game of poker is a game of skill or a game of chance. This office has consistently opined that the question of whether a game or competition is one of chance or one of skill is a fact question to be decided by a finder of fact.See, e.g. Op. Att'y Gen. 2004-357. Recently, however, the South Carolina Attorney General opined that a court would likely conclude that poker was a game of chance. 2004 WL 235411 (S.C.A.G.); see also Ky. Op. Att'y Gen. 90-409. The opinion noted various definitions of a game of chance, such as a game where chance can thwart any application of participant skill or a game where skill can increase the odds of winning but cannot determine the outcome without the element of chance. Id.
Question 3: If Mr. Hickam can demonstrate that the game of "Texas Hold'em" is one of skill and judgment rather than chance and chance alone,would the described activities violate any criminal statute?
In my opinion, the scenario described above would violate A.C.A. § 5-66-112 even if Mr. Hickam could demonstrate that poker was a game of skill and judgment. The statutory prohibition states:
 If any person shall be guilty of betting any money or any valuable thing on any game of . . . poker . . . he shall, upon conviction be fined[.]
A.C.A. § 5-66-112. The Arkansas Code prohibits the wagering of any thing of value on a game of cards irrespective of whether the game is one of skill or one of chance. If the prizes are funded by the application fees of the participants, it is indirect screen for wagering and would remain illegal under Ark. Code Ann. § 5-66-112.
Additionally, the same analysis applies to the offenses of operating a gambling house, under § 5-66-103, and exhibiting gambling devices, under A.C.A. § 5-66-104. These sections do not specify that games of chance are required, only that gambling is the offending act. Even if it were proven that "Texas Hold 'em" is a game of skill, if the prizes are financed from the entrance fee paid by the participants then wagering is indirectly occurring and the contest would remain statutorily prohibited.
With respect to the constitutional prohibition on lotteries, if Mr. Hickam were to suitably demonstrate to a finder of fact that poker was a game of skill and judgment, the constitutional prohibition on lotteries would not apply. Absent one of the three requirements, a lottery would not exist. See Op. Att'y Gen. 86-599.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] I additionally note that the Arkansas Alcohol Beverage Control ("ABC") Board is statutorily empowered to regulate licensed premises serving alcohol and such regulation includes the prohibition of gambling activities conducted on such premises. See A.C.A. § 3-5-221 (Repl. 1996); § 3-5-306 (Repl. 1996); § 3-9-236 (Repl. 1996); and Ark. Alcohol Bev. Control Reg. 3.19. If the premises rented are licensed by the ABC Board, then the ABC Board's prohibitions on gambling would apply. See
Op. Att'y Gen. 2004-357.